WHITE, et al. *v.* LEWIS.

Mar. 17, 1952.

No. 38320 (57 So. (2d) 497)

Arrington & Arrington, for appellants.

Henley, Jones & Woodliff, for appellees.

Alexander, J.

There is here involved the right to an injunction against an adjoining landowner and resident to forbid the invasion of domestic animals and fowls, to the detriment of complainants and their right to peaceable enjoyment of their property. The complainants are the owners of varying estates in the subject lands and the defendants are alleged to own or occupy the land from which the destructive or obnoxious invasions proceeded. Injunction was granted against Lelia White, Jack Handy, Thelma Handy and Phebia Handy. One Joe White whose complicity in the maintenance of the nuisance was in-

timated by the chancellor, was excluded by complainants from the restraint imposed by the decree, but joined in the appeal upon the theory that such exclusion denied him any right to damages in the event the decree should be held to be a temporary injunction and should be dismissed upon a motion to dissolve. This point we decide at once since further reference will not be necessary.

When a bill for injunction is fully heard upon its merits a decree thereon is a final decree and there is retained no right to inject the issue of solicitors' fees. This is especially true where there was no motion to dissolve and where the chancellor treated his decree as being upon the merits and a final decree. Capital Electric Power Ass'n v. Franks, 199 Miss. 226, 23 So. (2d) 922; Smith v. Young, 199 Miss. 658, 24 So. (2d) 746, 25 So. (2d) 136. The principle applies even though the bill prayed for temporary and permanent injunctions. The decree excluding Joe White from its provisions was, therefore, not prejudicial but favorable to him.

Appellants urge that there was insufficient evidence both as to the ownership of the respective animals and fowls and the fact of substantial damage to complainants' enjoyment of their land.

The so-called trespasses were alleged to have been committed by hogs, dogs, chickens and turkeys whose presence upon the property of complainants was not only annoying but created obnoxious incidents. Depredations were testified to have been caused by hogs and fowls. The dogs were accounted as being nonconducive to quietude and rest, and upon occasion a menace to safety and health. The casting of garbage near the boundary of complainants' land was included in their grievances. This element is at most a mere make-weight, since only one occasion was disclosed in which a small pile of trash, broken glass and empty cans were discovered almost by inadvertence and the responsibility therefor fixed only by surmise.

██ It is not necessary to debate whether dogs and chickens may attain the status of trespassers. It is enough that their presence and actions created a nuisance, and it is immaterial that such are not included within the terms of Code 1942, Sec. 4864. There is no fixed standard whereby a nuisance may be measured or adjudged, if it be not de minimis. Moreover, an injunction should not be granted except when a substantial nuisance of a continuing character is found or its creation or continuance threatened. Excluded from this category would be the incident of the garbage, which was promptly abated without threat of repetition. ██ Further yet, the coercive power of this extraordinary writ should not encompass those who neither owned nor controlled the annoying agencies. It is not a sufficient answer that one so enjoined suffers no injury and risks no citation for disobedience, if in fact he was in no degree responsible for the motley host of aggressors or any of them. Such restraint may not be laid upon one upon the insecure ground that, for all the complainant knows, he may in the future acquire a marauding or vagabond domestic beast or fowl.

██ There is no testimony that at the time of the decree, either Jack or Phebia Handy resided upon the land from which base these foraging sorties were launched. Thelma Handy was shown to own none of the objectionable miscreants. Only Lelia White was shown to own any hogs, dogs or chickens. The extent of her estate in these chattels was somewhat in contrast to the allegations of the bill and was subjected to conflicting views, not only as to the degree to which their cumulative annoyance attained, but also as to whether there was in fact any vexation at all, especially in view of the uncertainty as to identification of any as belonging to Lelia White.

We would not belittle the right of a landowner to an undisturbed enjoyment of his land. There was sufficient testimony to justify the learned chancellor in his finding that the nature and extent of vexation by itinerant

animals and fowls was sufficient to draw unto complainants the process of the court. We are without power to designate categorically the degree of harassment below which a complainant becomes guilty of an abuse of process. Each case supplies its own test. In accord with the foregoing views, we find that the injunction was rightfully allowed against Lelia White, except as to the matter of garbage disposal, but should be dismissed as to all the other defendants. Costs herein will be adjudged upon the basis of one-fourth against Lelia White and three-fourths against the appellees.

So ordered.

**Roberds, Hall, Kyle** and **Ethridge, JJ.,** concur.